NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**MICHELLE EBY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2019-1932

_____

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00553-CFL, Senior Judge Charles F. Lettow.

_____

Decided: July 17, 2020

_____

JACK BRADLEY JARRETT, III, Alan Lescht and Associates, PC, Washington, DC, for plaintiff-appellant.

DANIEL S. HERZFELD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by ETHAN P. DAVIS, REGINALD THOMAS BLADES, JR., ROBERT EDWARD KIRSCHMAN, JR.

_____

Before NEWMAN, O'MALLEY, and CHEN, *Circuit Judges.*

O'MALLEY*, Circuit Judge.*

Michelle Eby ("Eby") appeals from an order of the United States Court of Federal Claims ("Claims Court") granting the United States' ("government's") motion for summary judgment and denying Eby's cross-motion for summary judgment. *Eby v. United States*, 142 Fed. Cl. 293 (2019). For the reasons explained below, we *affirm*.

BACKGROUND

Eby was employed by the National Institute of Health ("NIH"), an agency within the Department of Health and Human Services ("HHS"), between 1989 and 2010. The NIH promoted Eby to a GS-13 position in 2001, and subsequently to a GS-14 position in 2003. *Eby*, 142 Fed. Cl. at 296. In 2009, Eby filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the government alleging disability discrimination. *Id.* In April 2010, the dispute resulted in a settlement agreement between Eby and the government, pursuant to which Eby agreed to resign and the government agreed that her supervisor would provide a neutral job reference for any future job applications.

Upon resigning from the NIH, Eby applied for a position as a Regulatory Health Project Coordinator in the Division of Drug Oncology Products in the Food and Drug Administration ("FDA"). The position had a maximum promotion potential to the GS-13 level. Eby asserts that, despite this, the hiring official at the FDA indicated that, if she performed well, she could be promoted to a GS-14 position within "a couple of years." J.A. 266. Eby did not receive a job offer from the FDA after the FDA contacted the NIH for a reference.

In 2011, Eby notified the HHS's Office of Equal Opportunity and Diversity Management that she believed the NIH had violated the terms of the settlement agreement.

The HHS determined that the NIH had made a good faith effort to comply with the terms of the settlement agreement. Eby then filed a claim with the EEOC, appealing the HHS's decision and alleging breach of the settlement agreement. *Eby*, 142 Fed. Cl. at 296. In April 2012, before the EEOC rendered its decision on Eby's claim, she was hired by the FDA as a Consumer Safety Officer—a different position than the one at issue in her claim against the HHS—at the GS-13 Step 10 level.

In May 2013, the EEOC rendered its decision, concluding that the HHS and NIH breached the settlement agreement. The EEOC also found, however, that the settlement agreement did not provide a remedy for breach of contract. Accordingly, it required that the HHS allow Eby to pursue one of two options: (1) reinstate the original EEOC disability discrimination complaint that led to the settlement agreement, thereby requiring Eby to return to her position at the NIH, return the awarded attorney's fees, and forego administrative leave, or (2) bring a retaliation claim against the HHS for failure to provide a neutral reference. Eby chose to pursue the retaliation claim before the EEOC.

Before the EEOC rendered its decision on the retaliation claim, Eby filed a complaint in the Claims Court, alleging breach of contract and seeking back pay and other employment benefits. While both the EEOC action and the Claims Court action were pending, the FDA transferred Eby to a Health Science Administrator position, again at the GS-13 step 10 level. In March 2017, the EEOC rendered a final judgment in Eby's favor on her retaliation claim and awarded back pay, fringe benefits, and attorney's fees. The EEOC also ordered the HHS to place Eby in a Regulatory Health Project Coordinator position at the FDA, *i.e.*, the position for which she initially applied. Eby, however, chose to stay in her then-current position.

After the EEOC's decision on the retaliation claim, the government moved to dismiss the action before the Claims

Court for mootness.  The Claims Court denied the motion because Eby had not yet received her back pay and benefits.  *Eby*, 142 Fed. Cl. at 295.  Subsequently, although Eby received that compensation, she maintained that her claim was still viable because the EEOC failed to consider back pay that Eby would have received if she had been promoted to a GS-14 position two years after she would have begun as a Regulatory Health Project Coordinator but for the NIH's retaliation—*i.e.* in June 2012.  *Id.*  Eby asserted these damages under a breach of contract expectation damages theory rather than under the Back Pay Act to which the EEOC's remedy was constrained.  *Id.*  The Claims Court granted limited discovery related to whether Eby would have been promoted and when.  *Id.*

At the close of discovery, the government moved for summary judgment and Eby filed a cross-motion for summary judgment.  *Id.* at 295–96.  The Claims Court granted the government's motion for summary judgment and denied Eby's cross motion for summary judgment two years later in March 2019.  *Eby*, 142 F.3d at 301.  The Claims Court found that Eby failed to prove she was entitled to a promotion to the GS-14 level at any time before March 2017 and, therefore, had failed to prove she was entitled to the damages she requested.  *Id.* at 300–01.  Eby timely appealed.[1]  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Eby raises two issues on appeal: (1) whether Eby proved her damages with reasonable certainty, and (2) whether the Claims Court incorrectly applied the "duly

---

[1]    Eby was promoted to a GS-14 level in January 2019, before the Claims Court issued its summary judgment ruling.

appointed" requirement to a breach of contract claim.[2] This court reviews the Claims Court's grant of summary judgment *de novo.* *Aviation & Gen. Ins. Co. v. United States*, 882 F.3d 1088, 1093 (Fed. Cir. 2018). The Claims Court grants "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rules of the Claims Court ("RCFC") 56(a).

Contracts with the federal government are generally governed by the same contract law that would apply to contracts between private individuals. *Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 607 (2000). In common law breach of contract cases, damages are awarded to make the non-breaching party whole by giving her the benefits she would have received if the breach had not occurred. *Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374, 1380 (Fed. Cir. 2001); *Estate of Berg v. United States*, 687 F.2d 377, 379 (Ct. Cl. 1982). These "expectation damages" are recoverable if they are (1) actually foreseen or reasonably foreseeable, (2) caused by the breach of the promisor, and (3) proved with reasonable certainty. *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001). In this case, the Claims Court found that Eby failed to prove she would have been promoted to a GS-14 position and therefore failed to prove her expectation damages with reasonable certainty. *Eby*, 142 Fed. Cl. at 301.

On appeal, Eby challenges the Claims Court's determination that she failed to prove with reasonable certainty that she would have been promoted to a GS-14 position. Eby contends that she would have been promoted to a GS-

---

[2] Generally, a federal employee is not entitled to the benefits of a position to which she has not been duly appointed, regardless of the reasons for the non-appointment. *United States v. Testan*, 424 U.S. 392, 402 (1976).

14 position within two years of being appointed to the GS-13 position at the FDA in 2010. The government asserts that Eby did not prove with reasonable certainty that she would have been promoted to a GS-14 position because the position for which she applied had a maximum promotion of GS-13 and appointment to a GS-14 position would have required Eby to compete with other applicants.

We conclude that potential discretionary promotions that are subject to a competitive process cannot provide the requisite reasonable certainty necessary to prove expectation damages. In a case involving private parties, the Supreme Court has held that, even where an employee might be given preference when applying for a promotion, the likelihood of that potential promotion is too speculative to sustain an expectation damages award. *See Richmond & D.R. Co. v. Elliot*, 149 U.S. 266, 268 (1893). In the government employment context, our predecessor court held that the possibility of a promotion, or even the probability of a promotion, is insufficient to sustain back pay awards at the higher pay grade. *Power v. United States*, 597 F.2d 258, 262 (Ct. Cl. 1979). Government agencies are responsible, moreover, for setting the pay grades of each job within the agency. An employee may advance to a higher pay grade only up to the maximum pay grade advertised in the job announcement. Pay & Leave Pay Systems, U.S. Office of Personnel Management, https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule/. Employees may advance to pay grades higher than advertised in the job announcement only by competing with other applicants on a merit system. *Id.* These precedents and the nature of government agency pay grades confirm that the Claims Court's resolution of this issue was correct.

Here, the FDA position at issue identified GS-13 as the maximum pay level the employee could attain. To advance to a GS-14 position, Eby would have been required to compete with other applicants. The competitive nature of such a promotion, and the discretion that the FDA could exercise

in promoting Eby, make Eby's claimed damages for GS-14 wages speculative. Eby contends that it was highly likely she would be promoted to a GS-14 position because she had worked at that level before and was a desirable employee, and that her supervisors represented to her that accepting particular GS-13 positions (including the particular Regulatory Health Project Coordinator she applied for in 2010) were likely to lead to a promotion to a GS-14 position. We do not find these arguments persuasive. These assertions do not show, with any degree of certainty, that Eby would have been promoted to the GS 14 level. At most they show that there was a good chance that Eby would be promoted. Missing is a showing of a reasonable certainty of promotion.

In this context, we may not rely on Eby's arguments regarding the promotion of other FDA employees. Eby argues that, since May 2009, eight out of ten FDA employees were promoted from the GS-13 level to the GS-14 level within two years of being hired to GS-13 positions. Additionally, Eby points to five individuals within the Office of Oncology and Hematology that were promoted to the GS-14 level within two years of being hired as GS-13 Project Coordinators or Project Managers. Again, these examples show that there may have been a good chance that Eby would be promoted, but they do not satisfy the reasonable certainty standard we must employ. In fact, these examples lend support to the opposite conclusion: each individual to whom Eby points was promoted only after applying to a GS-14 vacancy and undergoing a competitive selection process. At most, these examples demonstrate that promotion to a GS-14 level was a competitive process within the discretion of the FDA that often resulted in promotion, but not always.

Eby also argues that the Claims Court improperly held that an applicant for federal employment may never obtain contract damages calculated based on discretionary promotions. A federal employee allegedly aggrieved by a non-hire

determination is not entitled to the benefit of a position to which he or she has not been appointed—this is known as the "duly appointed" requirement. *Testan*, 424 U.S. at 402. Eby contends that, in ruling against her, the Claims Court improperly applied the duly appointed requirement to her breach of contract claim.  Contrary to Eby's argument, the Claims Court understood that Eby's damages recovery was not subject to the duly appointed requirement because her claim stems from a breach of the settlement agreement. *See Eby*, 142 Fed. Cl. at 299–300.   The Claims Court acknowledged that it was required to "consider the parties' evidentiary postulates regarding Ms. Eby's possible promotion" and therefore considered the competitive nature of promotion from the GS-13 Project Coordinator position to a GS-14 position and the FDA's lack of obligation to promote a Project Coordinator past the GS-13 level.  *Id.* at 300.

In fact, the Claims Court proceeded on the assumption that Eby had in fact been "duly appointed."  The Claims Court reasoned that, even if Eby had been duly appointed to the GS-13 project coordinator position for which she applied, the FDA's failure to promote her to a GS-14 position still would not have been compensable.  *Id.*  In such a scenario, Eby would be entitled to the salary of the position to which she would have been appointed, not the salary of a position for which she had to later compete.  *Id.*  Because the Claims Court considered the evidentiary positions of the parties on whether Eby proved with reasonable certainty that she was entitled to a GS-14 salary, we find no error in the court's analysis.

We conclude that the Claims Court correctly found that Eby failed to prove she would have been promoted with reasonable certainty and that the government, therefore, was entitled to judgment as a matter of law.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Claims Court's decision.

**AFFIRMED**